**UNITED STATES POSTAL SERVICE, Plaintiff,**

v.

**ORIENTAL NURSERIES, INC., P.O. Box 370903, Miami, Florida 33137, Defendant.**

**No. 80–966–Civ–JLK.**

United States District Court,
S. D. Florida.

June 17, 1980.

Clark Mervis, Miami, Fla., for plaintiff.

Louis M. Jepeway, Miami, Fla., Bregman, Abell, Solter & Kay, Washington, D.C., for defendant.

### ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

JAMES LAWRENCE KING, District Judge.

This is an action by the United States Postal Service against Oriental Nurseries seeking the temporary detention of the defendant's mail pursuant to 39 U.S.C.A. § 3007. The Postal Service seeks to detain the defendant's mail until the conclusion of administrative proceedings now in progress under 39 U.S.C.A. § 3005. The basis for the detention is that there is probable cause to believe that Oriental is engaged in a scheme or device designed to obtain money or property through the mail by means of false representation in violation of § 3005. The

Postal Service claims that an advertisement placed in magazines by Oriental for the mail order purchase of Paulownia tomentosa trees, was false and misleading.

A probable cause hearing was held on May 2, 1980 at which Dr. Frederick Knight, a research horticulturist with the United States Department of Agriculture, testified. The final hearing was held on June 2, 1980. Jack L. Levy, President of Oriental Nurseries, and Donald Graves, a forester and extension professor at the University of Kentucky, testified at the final hearing. The transcript of the Postal Service administrative proceedings was admitted into evidence during this final hearing. Donald Graves, Michael Dirr, Associate Professor of Horticulture at the University of Georgia, and William S. Romeka, a self-employed developer of Paulownia, testified at the administrative hearing.

### FACTS

In the spring of 1980, advertisements appeared in various magazines for the mail order sale of "Chinese Empress" trees, more properly known as Paulownia tomentosa.[1] The Postal Service contends that these advertisements contain false representations with respect to the Paulownia's growth rate, cold hardiness, leaf size, blossoms and ability to thrive in any climate or soil. A summary of the advertisement's alleged false representations and the evidence on each statement and Paulownia characteristic is considered separately below.

1. *Growth Rate.* The advertisement states that "THE FLOWERING 'CHINESE EMPRESS' GROWS UP TO A FULL 14 FEET IN ONLY 1 SEASON AND SOARS UP TO 23 FEET . . . IN ONLY 2 YEARS!!" and "YES, THE 'CHINESE EMPRESS' ACTUALLY GROWS UP TO 14 FEET IN THE VERY FIRST SEASON!"

The Postal Service claims that these statements constitute a false representation of the Paulownia growth rate. The testi-

1. The publications brought to the court's attention were: *Florida Horticulturist*, March 1980; *Woman's Day*, April 1980; and *Flower and Garden*, May 1980.

mony of each expert witness on the expected growth rate of a Paulownia under normal conditions, varied only slightly. Dr. Knight testified that the rate would be six and a half to 10 feet in the first year (5/2/80). Dirr concurred with a prediction of six to eight feet and possibly 10 feet (Tr. 32) while Graves states eight to 10 feet (Tr. 149); Romeka estimated seven or eight feet (Tr. 201).[2]

There was testimony of exceptional growth of Paulownia. Graves testified that he had personally observed a Paulownia which had grown 16 feet in one year and predicted that a vigorous stump sprout could grow up to 20 feet. Romeka also testified that he had observed Paulownias which had grown 12 feet in one year. However, this growth rate occurred in 6 Paulownias out of a 15,000 tree plantation. The remaining trees grew approximately seven or eight feet. (Tr. 201).[3] Despite these isolated reports of exceptional growth, Knight, Dirr, and Graves testified that, in all probability, an ordinary gardener could not expect this type of growth from the seedlings shipped by the defendant in response to mail orders.

2. *Cold Hardiness.* The advertisement states that "The amazing 'CHINESE EMPRESS' even thrives in shaded or sheltered area . . . in climates where temperatures can drop as low as 25 degrees below zero . . ." The testimony indicates that the Paulownia does not thrive at those temperatures, but that the tree may, in fact, be frozen to the ground or damaged. Although the roots may survive such extreme temperatures (Knight, 5/2/80), the advertisement indicates that the tree portion will also remain hardy. Dirr testified in the administrative proceedings that in the vicinity and temperature zone of Chicago, Illinois, the roots of the Paulownia are cold hardy enough to withstand the extreme winter cold, but that the tree never reaches flowering size because it is continuously damaged by the cold. (Tr. 40–41). Graves testified that under sustained cold of −25° F., the tree portion would probably die back to the ground.

3. *Leaf Size.* "ITS LEAVES MEASURE UP TO 2½ FEET ACROSS . . . shading your lawn with lush, dense, velvety foliage" is the advertisement's representation of the Paulownia leaf. The evidence gathered at both the administrative hearing and the hearing before this court reveals that the leaf size stated in the advertisement does occur, but only on shoots from established stumps, not from seedlings. (Knight, 5/2/80; Dirr, Tr. 43, 44; Graves 6/2/80; Romeka, Tr. 202.) The leaves of mature trees range in size from five to 12 inches. (Knight, 5/2/80; Dirr, Tr. 43.) Although neither Graves nor Romeka stated an estimate of mature leaf size, they both indicated that each had never observed leaves on mature trees the size of those on shoots.

---

**2.** The hearings held before this court were not transcribed. References to the testimony are delineated by the date of the hearing. Testimony presented at the administrative hearing is noted by transcript page number.

**3.** The exceptional growth observed in the Paulownia is generally the growth of a "sprout." A "sprout" is a young shoot from an established stump. The stump is a result of either cold damage to the tree or pruning. A "seedling" is a young plant grown from seed; seedlings were sold by the defendant, Dirr, who in his testimony summarized why sprouts experience exceptional growth (Tr. 33):

> What basically happens is that Paulownia grows during the summer season, during the growing season. It produces tremendous quantities of what we call food. The food is in turn translocated or moved to the root system. The roots are storage organs, just like a big gas tank, and so in essence these roots are just loaded if you can look at it as vitamins and minerals and foodstuffs.
> What happens then over a winter period is the tree is either cut down or it somehow is disfigured by cold, all that food is stored in the roots and you get one or two or three sprouts that developed from this winter damage right around the base. All this food that has been stored in the roots is in turn moved into these young shoots and they get this tremendous surge of growth, whereas from a seedling, they obviously cannot occur because a seedling just does not develop that complete or that large storage capacity that a stump sprout would. In other words, the cold might have hurt the tops.

4. *Blossoms.* With respect to the Paulownia flower, the advertisement states: "The 'CHINESE EMPRESS' tree not only drapes its branches with lush green foliage from EASTER TO LABOR DAY . . . but it smothers itself with brilliant BOUQUETS OF DELICATE FLOWERS in Spring and Summer." The Postal Service contends that this statement is misleading because it fails to state certain facts about the blossoms and falsely represents the time and length of blooming. The advertisement fails to state that it is physically impossible for the Paulownia to bloom before three years of growth (Graves, 6/2/80) and that blooms cannot be expected until three to six years of growth from seed (Dirr, Tr. 42). Generally, the Paulownia does not bloom sooner than five years. (Graves, Tr. 150). In addition, the Paulownia does not generate flowers and leaves at the same time as the advertisement indicates. The flowers precede the leaves. (Dirr, Tr. 27). The advertisement also indicates that the Paulownia blooms twice a year, once in the spring and once in the summer or throughout both seasons. The evidence indicates that the tree blooms only once a year for three to four weeks. (Knight, 5/2/80; Graves, 6/2/80; Dirr, Tr. 42; Romeka, Tr. 198). Moreover, Paulownia blooms only in areas in which the tree is climatically adapted. (Knight, 5/2/80).

5. *Ability to Thrive in Any Climate or Soil.* The statement that the Paulownia "GROWS IN PRACTICALLY ANY CLIMATE OR SOIL . . ." is not supported by the evidence. Dr. Knight (5/2/80) testified that the Paulownia is adapted to the middle latitudes, and Dr. Graves specified the temperate zone (6/2/80). Dirr testified that the Paulownia grows reasonably well south of New York. (Tr. 30). The tree does not grow well in tropic or subtropic zones. (Graves, 6/2/80). The advertisement does not point out these facts.

## DISCUSSION

Pursuant to 39 U.S.C.A. § 3007, the Postal Service seeks detention of the defendant's mail during the pendency of the § 3005 proceedings now in progress before the United States Postal Service. Section 3007 provides that the United States district court, upon application by the Postal Service and upon a showing of probable cause to believe § 3005 is being violated, may enter a temporary restraining order and preliminary injunction directing the detention of the defendant's incoming mail by the postmaster during pendency of administrative proceedings. *United States v. Beamish,* 466 F.2d 804 (3d Cir. 1972). Section 3005 provides that the Postal Service may institute an administrative action against any person engaged in conducting a scheme or device for obtaining money or property through the mail by means of a false representation. Therefore, the only issue before this court is whether there is probable cause to believe the defendant's advertisement for the sale of Paulownia seedlings contains false representations concerning the tree's characteristics.

After carefully reviewing the testimony and exhibits presented by the parties, the court concludes that there is probable cause to believe that the defendant is conducting a scheme or device for obtaining money or property through the mail by means of a false representation. The statements contained in the defendant's advertisement for the mail order sale of Paulownia tomentosa do not accurately depict the Paulownia's growth rate, cold hardiness, leaf size, blossoms, or ability to thrive in any climate or soil. As a result, a large number of consumers may be induced by this advertisement to purchase Paulownia trees which will not live up to the expectations created by the advertisement.

Based upon the foregoing the court does now,

ORDER AND ADJUDGE that a preliminary injunction is hereby issued directing the United States Postal Service to detain the incoming mail addressed to:

Oriental Nurseries, Inc.

P.O. Box 370030

Miami, Florida 33137

during the pendency of the administrative proceedings being held under 39 U.S.C.A. § 3005.

FURTHER ORDER AND ADJUDGE that the detained mail may be opened by the defendant and that such mail not clearly connected with the alleged unlawful activity be returned to the defendant.

FURTHER ORDER AND ADJUDGE that this injunction shall dissolve upon completion of the § 3005 proceedings now in progress before the Postal Service.